IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TRAVIS TREVINO RUNNELS, | § | |
| Petitioner, | § | |
| V. | § § § | No. 2:12-CV-0074-J-BB (death-penalty case) |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## ON RULE 60(b) MOTION FOR RELIEF FROM JUDGMENT

Before the Court is Runnels's Motion for Relief from Judgment and supporting brief, filed under Federal Rule of Civil Procedure 60(b) on June 1, 2017. ("Motion," doc. 52 and "Brief," doc. 53.) The Court previously denied Runnels's petition for habeas corpus relief. *See Runnels v. Stephens*, No. 2:12-CV-74-J-BB, 2016 WL 1274132 (N.D. Tex. Mar. 15, 2016) (Averitte, Mag. J.), *adopted by*, 2016 WL 1275654 (Mar. 31, 2016) (Robinson, J.). The Fifth Circuit Court of Appeals affirmed the judgment on November 3, 2016, but appointed new counsel to represent Runnels on a petition for rehearing. *See Runnels v. Davis*, No. 16-70012, 664 F. App'x 371 (5th Cir. Nov. 3, 2016); *Runnels v. Davis*, No. 16-70012 (5th Cir. Nov. 17, 2016) (order substituting counsel). No petition for rehearing has been filed. Instead, new counsel filed the instant Motion in this Court and moved the Court of Appeals for a stay pending its disposition. The Court of Appeals granted a stay on June 5, 2017. The Rule 60(b) Motion is a second-or-successive petition for habeas relief, and it should be transferred to the Court of Appeals.

# I. BACKGROUND

In 2003, while serving a seventy-year sentence for aggravated robbery, Runnels murdered a civilian prison employee, Stanley Wiley, in the presence of inmates and others working in a prison boot factory. Runnels approached Wiley from behind, pulled his head back, and deeply cut his neck to the spine with a trimming knife. Runnels then sat down and waited for the authorities.

James Durham, now deceased, represented Runnels at his 2005 trial. Mr. Durham was assisted by co-counsel Laura Hamilton, as well as a capital jury-selection consultant named Warren Clark, and a third attorney, Robert Hirschhorn, who helped prepare the juror questionnaire. The defense investigator, Kathy Garrison, conducted an expansive investigation that is reflected in more than 600 pages of notes and emails from her file. Her notes indicate a psychiatrist, Lisa Clayton, and a neuropsychologist, Richard Fulbright, were both retained to examine Runnels for purposes of trial. (3 SHRR 83-88, 126, 194, 278; 4 SHRR 167, 202.) The notes also reflect a 1993 evaluation conducted by psychologist Saleem S. Ateeh when Runnels was 17 years old. (4 SHRR 115-16.)

Mr. Durham had developed a trial strategy whereby Runnels would plead guilty, and counsel would offer mitigating evidence from family members showing Runnels had a rough childhood, was poor, was shuffled between family members, had trouble in school, and suffered disabilities that made it difficult to function, but could serve a life sentence in prison. On the morning of trial, Runnels's unanticipated guilty plea resulted in the State removing ten witnesses from its trial witness list. Mr. Durham cross-examined the remaining State's witnesses, as they were called, about Runnels's reputation for being truthful, peaceable, and trustworthy, and about the training and safety measures in place for prison employees. When the State concluded its presentation and it was time

to present the defense mitigation case, however, Runnels's family members had either failed to appear (his brother), disqualified themselves from testifying by watching the trial in violation of the "Rule" (his father), or left the courthouse and refused to return (his mother, father, and grandmother). At that point, Mr. Durham decided not to call any witnesses at punishment. Before he rested, Mr. Durham discussed his intentions with the trial judge, who was satisfied the decision was sound strategy. (1 SHCR 301, ¶ 11.) In closing argument, Mr. Durham asserted, among other things, that the State did not prove future dangerousness beyond a reasonable doubt and that Runnels's guilty plea was his first act of contrition and a factor warranting consideration of a life sentence by the jury.

State habeas counsel, Mr. Joe Marr Wilson, filed an application for habeas relief, alleging Mr. Durham's strategy was based on an inadequate investigation that left no options when the prepared strategy fell apart. Mr. Wilson received investigative assistance from a law school graduate, Alma Lagarda, who worked for the Texas Defender Service. In the habeas application, Mr. Wilson alleged that Dr. Fulbright's report, indicating the conditions in the jail had prevented testing in three areas of executive functioning and for Attention Deficit Disorder, should have prompted further investigation by trial counsel. Mr. Wilson presented affidavits from Runnels, his brother, his mother, his grandmother, and two cousins, which contained information about his childhood that was substantively similar to the information gathered by Garrison for trial. Runnels's mother and grandmother also asserted they had left the courthouse during trial because someone told them they could leave. The habeas court held an evidentiary hearing in which Garrison and Hamilton testified to the facts in the preceding paragraph, specifically, that the subpoenaed family members left the courthouse of their own accord and refused to return. Garrison testified Runnels was not "particularly surprised" by his family's lack of support and when advised they had left, replied, "That

figures." (2 SHRR 69.) The state habeas judge–the same trial judge who had conferred with Mr. Durham in chambers before he rested–found that Mr. Durham was not ineffective. The Texas Court of Criminal Appeals denied habeas relief. *Ex parte Runnels*, No. WR-46,226-02, 2012 WL 739257 (Tex. Crim. App. Mar. 12, 2012).

In December of 2012, Mr. Don Vernay filed the original federal habeas petition raising the ineffective-assistance-of-trial-counsel ("IATC") claim against Mr. Durham as "claim 1." Mr. Vernay also argued state habeas counsel, Joe Marr Wilson, provided ineffective assistance as "claim 2." (Doc. 17.) This issue was supported by an affidavit from Alma Lagarda. (Ex. G.) With the petition, Mr. Vernay filed a motion to suspend the proceedings and for leave to amend the petition after the Supreme Court issued an opinion in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). (Doc. 18.) The Court denied the motion because the parties did not identify any procedurally defaulted claim in the petition. (Doc. 27). But when Respondent filed an answer alleging for the first time that a portion of Runnels's IATC claim was defaulted, the Court asked for supplemental briefing on *Trevino* and *Martinez v. Ryan*, 566 U.S. 1, 17, 132 S. Ct. 1309, 182 L. Ed.2d 272 (2012). (Doc. 31.)

Ultimately, the Court held that the IATC claim (claim 1) was exhausted in its entirety and declined to expand the application of *Martinez* to allow the relitigation of a claim that had been denied on the merits in state court. *Runnels*, 2016 WL 1274132, at *3, *13-14. The Court in the alternative held that state habeas counsel was not ineffective for failing to obtain a psychological examination and failing to present live testimony (claim 2). *Id.* at *15. The Court also concluded that the allegedly unexhausted portion of the IATC claim (based on the failure to obtain more psychological testing) was not "substantial" under *Martinez* because Alma Lagarda's affidavit was

conclusory in nature and otherwise insufficient to show state habeas counsel should have pursued psychological testing. *Id.* at *15-16.

Having determined that the IATC claim was exhausted, the Court then analyzed the state court's ruling under the deferential standard in the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d). The Court addressed the sufficiency of the mitigation investigation including the mental health investigation, the reasonableness of Mr. Durham's prepared strategy and the strategy he ultimately carried out, the efficacy of Mr. Durham's cross-examination, the absence of live defense witnesses in state habeas court, and the effect of Mr. Durham's death on Runnels's ability to litigate the claim. The Court addressed the harm that could have resulted from (1) a mental health defense that would have exposed Runnels's resistance to institutionalization and his statement that he was not going back to jail alive, and (2) a mitigation theme that could have triggered the State to present damaging information known to the defense, but kept from the jury, that Runnels had a history of organizing prisoners to use aggression and bloodshed to enact change. This Court upheld and/or deferred to the state court's ruling under both prongs of *Strickland*, finding it was not unreasonable under the AEDPA. *Runnels*, 2016 WL 1274132, at *16-24.

## II. THE ISSUES BEFORE THE COURT

Five years ago, the United States Supreme Court declined to create a constitutional right to counsel in initial state-habeas proceedings. Instead, the Court created an equitable exception to the procedural bar that occurs in federal court when state habeas counsel renders constitutionally ineffective assistance in failing to exhaust a claim of ineffective trial counsel. *See Martinez*, 566 U.S at 17. In his dissent, Justice Scalia perceived no practical difference between the two. *Id.* at 18-19 (Scalia, J., dissenting). He characterized the holding as a repudiation of the longstanding principle

governing procedural default. *Id.* at 23. He predicted, "the States will *always* be forced to litigate in federal habeas, for *all* DEFAULTED INEFFECTIVE-ASSISTANCE-of-trial-counsel claims," either the validity of the defaulted claim or the effectiveness of state habeas counsel. *See id.* at 21-22 (emphasis in original). The effect in capital cases would be more than just a squandering of resources, he warned, but a reduction of the sentence, "giving the defendant as many more years to live, beyond the lives of the innocent victims whose life he snuffed out, as the process of federal habeas may consume." *Id.* at 23.

The procedural-bar exception in *Martinez* was intended to protect defendants from otherwise unreviewable claims of ineffective trial counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2066 (2017). In death penalty cases, however, *Martinez* has become a common tool for delay. Judicial resources are consumed reviewing recycled IATC claims with "new" evidence that is strategically presented in an effort to render the claim unexhausted to obtain federal review. And, because the application of the *Martinez* exception depends on the merit of the allegedly unexhausted claim, the practical effect is that no claim escapes review. The 60(b) Motion before this Court, which is in reality a successive habeas petition, aptly demonstrates how *Martinez* is used in this way. But this case even goes beyond the scenario Justice Scalia outlined in that it seeks to reopen the proceedings on the ground that *federal habeas counsel* was ineffective when he failed to use *Martinez* to adequately pursue such tactics.

Runnels seeks to reopen these proceedings on the ground that (1) federal habeas counsel was ineffective for failing to adequately litigate (2) state habeas counsel's ineffectiveness in connection with (3) an allegedly defaulted claim of ineffective trial counsel. Runnels argues Mr. Vernay virtually abandoned him because he filed a *"Martinez* claim" in name only and did not investigate

or provide new evidence or allegations of any kind. Brief, p. 5. The affidavit of Alma Lagarda, presented in support of the federal petition, refutes this assertion. *See* Ex. G. Nevertheless, Runnels presents a newly-obtained neuropsychological evaluation by Dr. John Fabian, who diagnosed Runnels with ADHD, a language-based learning disability, frontal lobe damage, and post-traumatic stress disorder. Brief, p. 8. Runnels contends these diagnoses are "intertwined with severe personal, financial, and familial hardships Mr. Runnels faced during his childhood and adolescence, all providing a significant case in mitigation that was unknown to the jury as well as every subsequent appellate court." Brief, p. 8. Without acknowledgment of the fact that his subpoenaed mitigation witnesses walked out of his trial, Runnels concludes that this evidence, which is essentially the same evidence trial counsel was prepared to present, "places his claim in a 'significantly different legal posture' from what was presented in state court." In other words, he contends the claim is now unexhausted. Reply, p. 7. While further failing to acknowledge the evaluations of Dr. Clayton, Dr. Fulbright, and Dr. Ateeh, Runnels asserts he has "never received a complete mental health evaluation in any proceeding prior to the evaluation by Dr. Fabian." Reply, p. 6. He concludes Dr. Fabian's report is proof that state habeas counsel's failure to hire a mental health expert amounted to ineffective assistance and a powerful *"Martinez* claim" therefore exists. Brief, p. 13.

Runnels equates the alleged failure to develop "a defaulted claim under *Martinez*" as the equivalent of structural error justifying Rule 60(b) relief. Reply, p. 3. He also asserts that certain actions taken by the Court of Appeals in 2016 are powerful evidence of Mr. Vernay's "functional abandonment" in this Court four years earlier and are corroborated by the fact that Mr. Vernay needed two extensions of time to file the petition in this Court. Reply, p. 4; *see also* Supplement, p. 4 (Doc. 65); Supplemental Reply (Doc. 70-1). Respondent argues the Motion is a successive

petition, the Motion presents no extraordinary circumstances justifying relief under Rule 60(b), the IATC claim is exhausted, insubstantial, and not subject to the *Martinez* exception, and the Motion is untimely. *See* Response (Doc. 55); Supplemental Response (Doc. 68.)

Before addressing the parties' arguments, it is necessary to clarify that an assertion of ineffective state habeas counsel is not a "*Martinez* claim," as the Motion suggests. State habeas counsel's ineffectiveness may be, under the current framework, adequate cause to excuse a failure-to-exhaust procedural bar, but it is not an independent claim for relief because the Supreme Court in *Martinez* declined to create a constitutional right to state habeas counsel. For clarification purposes in the following discussion, the word "claim" refers only to the IATC claim (claim 1). The Court will identify the alleged ineffectiveness of state habeas counsel ("claim 2") as an exception to procedural bar when necessary. With this clarification, the Court turns to the arguments of the parties.

### III. THE MOTION IS A SECOND-OR-SUCCESSIVE PETITION

Federal Rule of Civil Procedure 60(b)(6) allows a district court to grant relief "from a final judgment, order, or proceeding" for "any . . . reason that justifies relief." To succeed on a Rule 60(b) motion, the movant must show: (1) that the motion is made within a reasonable time; and (2) extraordinary circumstances exist that justify the reopening of a final judgment. *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *Clark v. Davis*, 850 F.3d. 770, 778 (5th Cir. 2017).

Petitioners "sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *In re Edwards*, 676 F. App'x 298, 303 (5th Cir.), *cert. denied sub nom. Edwards v. Davis*, 137 S. Ct. 909 (2017) (citing *Gonzalez*, 545 U.S. at 531–32). Any claim presented in a second-or-successive habeas petition that was presented in a prior application must be dismissed under the AEDPA. *See* 28 U.S.C. § 2244(b)(1). A claim that was *not*

presented in a prior petition must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence. *See* § 2244(b)(2); *Gonzalez*, 545 U.S. 529-30. Before a district court may accept a second-or-successive petition for filing, the Court of Appeals must determine that it presents a claim not previously raised that is sufficient to meet the above provisions. *See* § 2244(b)(3); *Gonzalez*, 545 U.S. at 530.

The Supreme Court has distinguished between a second-or-successive habeas petition and a Rule 60(b) motion in terms of substance and procedure. *In re Coleman*, 768 F.3d 367, 371 (5th Cir. 2014). A Rule 60(b) motion that either presents a new habeas "claim" or attacks the federal court's previous resolution of a claim "on the merits," should be treated as a second-or-successive habeas petition and is subject to the AEDPA's limitation on such petitions. *See Gonzalez*, 545 U.S. at 532. A determination under § 2254(d) is a determination "on the merits." *Id.* at 532 n.4.

The instant Motion reasserts a claim that Runnels presented in his federal habeas petition, namely, the IATC claim challenging trial counsel's mitigation investigation, including his failure to seek additional psychological testing (claim 1). In the original proceeding, the exhaustion status of this claim and the application of the *Martinez* exception were disputed. The Court found the claim exhausted and, since it was not procedurally barred, the Court did not apply a procedural bar but analyzed the claim "on the merits" under § 2254(d). The Motion presents new evidence in the form of a neuropsychological report in an attempt to (1) show that state habeas counsel was ineffective and (2) "unexhaust" the IATC claim and relitigate it *de novo* under *Martinez*. As such, the Motion attacks the previous resolution on the merits and is a second-or-successive petition.[1] *E.g., Gonzalez*,

---

[1] In addition to attacking the merits of this Court's original ruling, the Motion attempts to circumvent the holding in *Pinholster*, which limits the record under review to the record that was before the state court at the time it adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182, 131 S. Ct. 1388,

545 U.S. at 531 (recognizing that a Rule 60(b) motion presenting new evidence in support of a claim already litigated is subject to habeas rules).

Runnels, however, asserts he is not attacking the merits of the Court's denial of relief but is instead raising structural error in the form of extreme attorney negligence and abandonment by Mr. Vernay. Yet, *Martinez* did not create a constitutional right to federal habeas counsel, and such procedural defects are narrowly construed. They include fraud on the habeas court as well as erroneous previous rulings that preclude a merits determination, such as failure to exhaust, procedural default, or statute-of-limitations bar. *Coleman*, 768 F.3d at 371. A claim that federal counsel labored under a conflict of interest is one type of attorney error that has been held to affect the integrity of the proceedings. *See Clark*, 850 F.3d at 779-80. Ordinarily, however, an omission by habeas counsel "does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Gonzalez*, 545 U.S. at 532 n.5. This Motion is one such example; it does not challenge a procedural defect that prevented a merits ruling because, as recited above, the Court ruled on the merits.

Nevertheless, Runnels relies on *Mann v. Lynaugh*, which granted 60(b) relief to a petitioner in the form of extra time to perfect an appeal. *Mann v. Lynaugh*, 690 F. Supp. 562, 565-68 (1988) (Buchmeyer, J.). Runnels asserts this case is analogous to *Mann* in that Mr. Vernay effectively abandoned him by failing to file a cognizable *"Martinez* claim" and failing to ask for funding to hire an investigator or mental health expert. Brief, p. 14. The circumstances in *Mann* are distinguishable. The court in *Mann* granted relief to remedy counsel's untimely notice of appeal in a case in which

---

179 L.Ed.2d 557 (2011).

the district court had granted a certificate of appealability. *See Mann*, 690 F. Supp. at 564 n.2. The error was procedural in the sense that it had prevented the appeal from going forward.[2]

Here, Runnels is attempting to relitigate the IATC claim with additional evidence not previously presented to the state courts, namely Dr. Fabian's report. Runnels asserts, however, that the report is new evidence of *state habeas counsel's* ineffectiveness, which he mischaracterizes as a cognizable "*Martinez* claim." But, as previously clarified, the "claim" in this case is the claim against *trial counsel*. That claim was not procedurally defaulted. The new evidence is an attempt to *create* procedural default through the presentation of new, unexhausted evidence. It does not challenge any procedural bar applied by the Court. It therefore sounds in substance, not procedure.

## IV. FEDERAL COUNSEL'S REPRESENTATION DID NOT CREATE STRUCTURAL ERROR

To the extent Runnels contends Mr. Vernay's representation was structural error because he failed to recast an exhausted claim as an unexhausted claim subject to default, the Court disagrees. First, Runnels demonstrates no relevance between actions taken by the Court of Appeals in 2016 and Mr. Vernay's representation of Runnels in this Court four years earlier. While there is nothing in the record suggesting what the Court of Appeals may have considered before ruling, the Court of Appeals *affirmed* the decision of this Court denying relief before granting Mr. Vernay's motion to withdraw. That chronology may suggest the Court of Appeals was not concerned about the constitutionality of the representation provided by Mr. Vernay, but in any event it does show the appellate court did not sua sponte find Mr. Vernay's representation deficient. Second, the Court does not perceive the filing of extension motions by Mr. Vernay as indicative of ineffectiveness. This is

---

[2] Mann was also granted relief to raise claims made newly available by Supreme Court case law. Runnels's motion does not rely on newly available law, so *Mann* does not avail him.

especially true where, as here, the Court set a deadline for scheduling purposes that preceded by several months the due date under the statute of limitations, and Mr. Vernay's efforts were hindered by Runnels informing the Court of his desire to abandon his appeals. (Doc. 13.) Third, Mr. Vernay did not overlook the benefits of *Martinez*. On the contrary, he anticipated that *Trevino* would be decided in petitioner's favor and moved for leave to amend the petition in anticipation of that happening. The petition alleged in "claim 2" that state habeas counsel was ineffective and relied on new evidence in the form of an affidavit from Alma Lagarda. Runnels presents no authority that federal counsel abandons his client by failing to do more to "unexhaust" an IATC claim that was litigated in state court. The very suggestion distorts the holding in *Martinez* and its chief concern that a claim of ineffective trial counsel might escape review in state court. *See Davila,* 137 S. Ct. at 2066 (noting that chief concern addressed by *Martinez* was to ensure that meritorious claims of ineffective assistance of trial counsel receive review by at least one state or federal court). Here, the very same challenge to trial counsel's investigation and strategy that is raised in this Motion did *not* escape state court review, or federal review, for that matter.

A strategic concession that an IATC claim is unexhausted, commonly made to obtain *de novo* review after *Martinez,* merely "encourages state defendants to concoct 'new' IAC claims that are nothing more than fleshed-out versions of their old claims supplemented with 'new' evidence." *See Ward v. Stephens,* 777 F.3d 250, 257 n.3 (5th Cir. 2015) (citing *Dickens v. Ryan,* 740 F.3d 1302, 1328 (9th Cir. 2014) (en banc) (Callahan, J., concurring in part and dissenting in part), *cert denied,* 136 S. Ct. 86 (2015). The Motion before the Court does just that; it presents a "fleshed out" version of the old IATC claim with new evidence in the form of an expert report.

The selection of an expert witness, however, "is a paradigmatic example of the type of strategic choice that, when made after a thorough investigation of the law and facts, is virtually unchallengeable." *See Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) (quotations omitted). Here, trial counsel hired two mental health experts to evaluate Runnels, and neither expert provided information useful to the defense. Lisa Clayton apparently did not provide a written report of her unhelpful findings. (4 SHRR 202.) Dr. Fulbright's report (although based on testing less thorough than Fulbright wished) concluded that Runnels likely *has* ADHD and the associated deficits in executive functioning. (4 SHRR 177.) Fulbright's report also contains damaging information about Runnels's mental state, however, such as his planning of the murder, his lack of remorse and belief that the murder was justified, his dislike of correctional officers, and his assertion that he was not going back to jail alive. Counsel's rejection of a mental health-based defense is further supported by the 1993 evaluation describing Runnels's "cold resistant attitude," his difficulty dealing with stress that may lead to aggression, and his inflexible thinking and values that make him a challenging candidate for therapeutic change. (4 SHRR 115.) The totality of this information combined would cause reasonable counsel to reject a strategy based on mental health. (4 SHRR 168, 171); *see Runnels*, 2016 WL 1274132, at *23 (citing *Brown v. Thaler*, 684 F.3d 482 (5th Cir. 2012) for the principle that a decision not to offer evidence of a disadvantaged background can be reasonable if the evidence suggests the defendant is a dangerous product of his environment and not likely to change). Upon receiving such information, trial counsel is not obligated to pursue more testing "until it bears fruit or all conceivable hope withers." *See Chanthakoummane v. Stephens*, 816 F.3d 62, 70 (5th Cir. 2016). Counsel is not ineffective for failing to canvass the field to find a more favorable expert. *See Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000).

It follows that Mr. Vernay did not create structural error by failing pursue more testing. The mere fact that, twelve years after trial, habeas counsel located a new expert with a different opinion does not demonstrate abandonment by Mr. Vernay, nor does it make trial counsel ineffective or the trial experts wrong. Furthermore, the Motion does not refute the abandonment by Runnels's family members that was found to have occurred in this case. Any present contention that the family members could have contributed to a significant mitigation defense is in direct conflict with the fact that the family was unwilling to do so at the time of trial. Therefore, the present assertions of new evidence, even if true, cannot demonstrate structural error in the original proceedings in this Court.

## V. CONCLUSION

For the reasons set out, this is not a case for Rule 60(b) relief. The motion is based on federal habeas counsel's failure to locate additional mitigation evidence that was not obtained by trial counsel. Runnels argues the evidence he has developed, Dr. Fabian's neuropsychological evaluation, was the type of evidence federal habeas counsel should have developed and that it should allow him to reopen this federal habeas case.

The Court does not minimize Dr. Fabian's report, but if all that is required to set aside a final judgment pursuant to Rule 60(b) is to present additional mitigation evidence by one or more experts, then Rule 60(b) relief becomes the rule rather than the exception. Secondly, since no procedural bar for failure to exhaust was imposed, no *Martinez/Trevino* issue is presented.

## VI. RECOMMENDATION

The Motion constitutes a second-or-successive habeas petition that requires authorization by the Court of Appeals under 28 U.S.C. § 2244(b)(3). This Court may either dismiss the motion for lack of jurisdiction or transfer it to the Court of Appeals. *See In re Hartzog*, 444 F. App'x 63, 64 (5th Cir. 2011) (citing *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000)). "Normally, transfer

will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time consuming and justice-defeating." *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990). The undersigned finds that it is in the interest of justice to transfer the motion to the Court of Appeals rather than dismiss. Runnels motion for relief under Rule 60(b) should be **TRANSFERRED** to the United States Court of Appeals for the Fifth Circuit as a second-or-successive petition.

ENTERED this 29th day of September, 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## *NOTICE OF RIGHT TO APPEAL/OBJECT*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).