IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TRAVIS TREVINO RUNNELS, | § § § | |
| Petitioner, | § § | |
| v. | § § | 2:12-CV-0074-J |
| LORIE DAVIS, Director, | § | (death-penalty case) |
| Texas Department of Criminal Justice, Correctional Institutions Division, | § § § | |
| Respondent. | § § | |

## ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION and TRANSFERRING CASE TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

On October 13, 2017, Travis Trevino Runnels filed his objections to the Magistrate Judge's Report and Recommendation on Rule 60(b) Motion for Relief from Judgment (Doc. 73, "R&R"). *See* Docs. 74 and 75 ("Objections"). This matter having come before this Court on consideration of said objections, and following a *de novo* review of Runnels's Motion for Relief from Judgment under Rule 60(b) and related papers filed in this cause, it is the opinion of the Court that such objections be denied in all respects. The Court further finds the findings and conclusions of the Magistrate Judge are correct and adopts them as the findings and conclusions of the Court.

I.

The objections reassert the argument that prior federal habeas counsel, Mr. Don Vernay, should have obtained a complete neuropsychological evaluation of Runnels in an effort to "unexhaust" the

ineffective-assistance-of-trial-counsel-claim ("IATC" claim) presented in the original federal petition. The objections conclude that Mr. Vernay's failure to do so amounted to abandonment and structural error justifying 60(b) relief.[1] *See* Fed. R. Civ. P. 60(b). This conclusion, he asserts, is supported by the subsequent actions taken by the Court of Appeals, as well as by the Court of Appeals's decision to stay rehearing proceedings and *sua sponte* inform the parties of the actions it took.

### A. Alleged structural error due to abandonment by Mr. Vernay

Runnels's contention that Mr. Vernay "failed to perform at all" with respect to the IATC claim is not supported by the record. While it is true that he did not have Runnels evaluated by a neuro-psychologist, it is also true that, at the time the petition was filed, the holding in *Martinez v. Ryan*, 566 U.S. 1 (2012) did not apply to Texas inmates. *See Ibarra v. Thaler*, 687 F.3d 222, 227 (5th Cir. 2012). Exhausted claims were (and are) reviewed on the record that was before the state court, effectively foreclosing the use of any new evidence. *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (holding that evidence introduced in federal court has no bearing on habeas review of claims decided on the merits in state court).

Mr. Vernay nevertheless correctly anticipated the favorable outcome in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) and raised a colorable IATC claim using the *Martinez* exception to procedural bar and supporting it with new evidence in the form of the state habeas investigator's affidavit. He simultaneously moved for leave to amend or supplement the petition once the *Trevino* opinion issued, and he anticipated further factual development. *See* Doc. 18 ("Motion for Leave to File Preliminary Petition for Post-Conviction Writ of Habeas Corpus, Subject to Subsequent Amendment and/or

---

[1] Although the brief supporting the objections on page 2 misidentifies Mr. Vernay as state habeas counsel and misquotes the R&R in that respect, this appears to be a typographical error, and Runnels does not otherwise dispute that Mr. Vernay was his *federal* habeas counsel.

Supplementation").

The barrier faced by Mr. Vernay (and, incidentally, by current appointed counsel) is that this Court found that the IATC claim was exhausted, not procedurally barred, and therefore not amenable to relitigation and factual development under *Martinez*. The claim was therefore subject to review under 28 U.S.C. 2254(d), which is limited to the state-court record alone. *See Pinholster*, 563 U.S. at 182.

Runnels asserts, however, that the Magistrate Judge erred in finding that the IATC claim raised in the 60(b) motion is the same IATC claim that was presented to the state court and found by this Court to have been exhausted. Objections at 5. He contends that Dr. John Fabian's 2017 neuropsychological report contains material and significant factual allegations that serve to fundamentally alter the claim, thereby rendering it "unexhausted." *See Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (holding, prior to *Martinez*, that dismissal for non-exhaustion is not required when evidence presented for the first time in a habeas proceeding "supplements" but does not "fundamentally alter" the claim presented to the state courts); *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) (recognizing that a petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court).

This argument does not avail Runnels in his efforts for Rule 60(b) relief. If Runnels is correct that the presentation of Dr. Fabian's report is sufficient to fundamentally alter the claim previously presented (which this Court does not hold), then by his own admission, he is raising a new claim that was not presented in a prior application. Under these circumstances, the 60(b) motion is a second-or-successive petition subject to the limitations in 28 U.S.C. § 2244(b)(2). *See Gonzalez v. Crosby*, 545 U.S. 524, 531-32 (2005) (holding that a Rule 60(b) motion that contains a claim previously omitted due

to excusable neglect or that presents newly discovered evidence in support of a claim previously denied is a successive habeas petition and should be treated accordingly). Because the Court of Appeals has not authorized the successive habeas proceeding under section 2244(b), this Court does not have jurisdiction to consider the claim.

### B. Dr. Fabian's report does not support equitable relief

Assuming for the sake of argument that Runnels's motion for Rule 60(b) relief is *not* a successive habeas application and that this Court has jurisdiction over the claim, the Court holds in the alternative that Runnels has not made a case for equitable relief. He presents a 33-page affidavit based on a neuropsychological evaluation conducted by Dr. Fabian in April and May of 2017. *See* Doc. 53-1, p. 115. Dr. Fabian concluded that Runnels suffers from Attention Deficit Hyperactivity Disorder (ADHD), Language-Based Learning Disorder (LBLD), and Post-Traumatic Stress Disorder (PTSD) (due in part to years of incarceration). He also found evidence of addiction and dependence to alcohol and cannabis prior to his incarceration (because he is not using drugs in prison). Dr. Fabian opined that Runnels would have benefitted from treatment for these conditions in the nature of special education for ADHD and LBLD, medication for ADHD, counseling for PTSD, and drug treatment. He also believed the ADHD and LBLD could be treated in a prison environment and that such treatment would have an impact on Runnels's impulsivity and cognitive functioning. Doc. 53-1, p. 141-43. The report is based on historical facts contained in the very same affidavits filed by Mr. Vernay in support of the federal petition, which were originally obtained by state habeas counsel from Runnels's grandmother, mother, brother, and two cousins. Doc. 53-1, p. 116; *see* Doc. 17 (Petition and Exhibits). Other historical data considered by Dr. Fabian is, by all appearances, the same information gathered by trial counsel's investigator, Kathy Garrison; Runnels identifies nothing new. Doc. 53-1, p. 116.

Dr. Fabian's report is proffered to support the interrelated arguments that (1) trial counsel was ineffective under the Sixth Amendment, (2) state habeas counsel was therefore ineffective under *Martinez*, and (3) Mr. Vernay therefore abandoned Runnels in federal court, causing structural error. The report does not, however, support the underlying substantive claim advanced by Runnels of ineffective trial counsel.

Trial counsel had obtained a 1993 psychological report from Runnels's juvenile probation file stating that: Runnels had basically raised himself, lacked coping skills, has difficulty controlling his behavior and may be aggressive under stress, has no family support, has communications problems, lacks overall verbal skills for conversation, is uncooperative, has a hostile demeanor, is one-sided and non-reciprocal in relationships, and has inflexible thinking and values, which makes him a difficult candidate for therapeutic change. 4 SHRR 115-16. Trial counsel also retained psychiatrist Lisa Clayton and neuropsychologist Richard Fulbright to examine Runnels. 1 CR 68, 69. Dr. Clayton did not provide helpful information and her report, if any, is not in the record. 4 SHRR 166, 184, 202. Dr. Fulbright submitted a report, but was unable to complete the full testing due to jail restrictions on his physical access to Runnels.

The Magistrate Judge concluded that Dr. Fulbright's incomplete evaluation and the 1993 psychological evaluation, along with Dr. Clayton's results and other information known to the trial team together support trial counsel's strategic decision not to present a mental-health based defense. Runnels argues that trial counsel could not have reasonably reached this strategic conclusion without a complete evaluation from Dr. Fulbright, and he seems to assert that trial counsel abandoned a mental-health defense *because* the testing could not be completed. These assertions are inconsistent with the facts in the record and the deference required by law. In situations where counsel's investigation is less than

complete, *Strickland* holds, "Strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on the investigation." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*

Where, as here, the incomplete report of Dr. Fulbright *assumed* Runnels had ADHD and related executive-functioning deficits, and these assumptions were ultimately confirmed by Runnels's current expert, Dr. Fabian, the reasonableness of trial counsel's chosen strategy is not undermined. Despite Runnels's earlier assertion that Dr. Fabian's report is so materially different from prior evidence that it fundamentally alters the claim for relief, he later concedes, correctly, that Dr. Fabian *corroborates* Dr. Fulbright's suspicion that Runnels suffers from ADHD and related deficits in executive functioning. Objections at 6-7, 8. In fact, Dr. Fabian corroborates other information known to trial counsel: Fabian, like Fulbright, found fault in the education, juvenile justice, and prison systems for failing to provide the psychological services Runnels obviously needed. And Dr. Fabian's diagnosis of LBLD, with its attendant weaknesses in language and communication skills, is corroborated by findings in the 1993 evaluation that Runnels had communications problems and lacked overall verbal skills for conversation.

Runnels argues that, nevertheless, trial counsel was obligated to complete Dr. Fulbright's evaluation and introduce evidence of ADHD and executive functioning deficits because it impacts "an individual's ability to regulate behavior, control impulses, and process information." He asserts this evidence would have had mitigating effect and aided the jury's understanding of the circumstances surrounding the victim's death, and he points out that these conditions are treatable with medication and psychological services. Objections at 7-8. Runnels cannot, however, pick and chose the evidence to

support his claim of ineffective trial counsel and ignore evidence and consequences to the contrary. The same evidence could be used by the prosecution to argue how dangerous Runnels would be if he chose not to take his medication or receive the necessary services. This aggravating effect would be enhanced by these facts in Dr. Fulbright's report:

- Runnels had become increasingly angry about his treatment at TDCJ.

- Runnels stated that he planned to kill the victim.

- Runnels reported that he had an argument with the victim the day before and planned to kill the individual.

- Runnels did not care about the consequences prior to assaulting the victim.

- Runnels had tried to avoid altercations in prison during this time, and he stated, "So if I had to do anything, I know it's justified, because I didn't do anything."

- At the time, Runnels was serving a 70-year sentence for robberies and felt the sentence was unfair because of his limited involvement in the crimes.

- Runnels told his brother that he "can't stand" the police and correctional officers and said, "I ain't going back to jail alive."

- Runnels told his brother he felt he could not complete his sentence and that "there has to be another way out."

- Regarding the prison guards, Runnels told his brother that "these young white guys can play with your life because you are locked up."

- Runnels attempted suicide by overdose because he was "tired of prison"

- Runnels reported that he becomes increasingly frustrated when left alone with nothing to do, such as when he is in segregation, and that sometimes the only way to entertain himself is with negative behaviors.

4 SHRR 167-72.

The above information, showing that Runnels planned the murder as an act of retaliation and was strategically avoiding altercations so he could feel justified when they occur, flies in the face of a

mental-health defense based on an inability to plan and control his impulses. This information, which trial counsel could reasonably expect the State to use in rebuttal, is strong evidence that Runnels is not a good candidate for a sentence of life imprisonment. The report makes clear his resistance to institutionalization, which was already well-known to trial counsel. *See* 3 SHRR 164 (Runnels just came to the point where he could take no more disrespect), 335 (Runnels would like a hung jury or death, he is not institutionalized or has an extreme problem with authority); 4 SHRR 50 (letter describing Runnels's intolerance of the jail conditions he experienced while awaiting trial and stating, "I'm letting you know this current situation will burn out and lead to trouble for me."), 101 (Runnels's future will not include living in prison and he does not want a life sentence). This aspect of Runnels's mental state would have shed new light on the disciplinary violations against guards that were introduced at trial and could have opened the door to other information kept from the jury, including his efforts to organize inmates to enact changes through violence and bloodshed. 2 SHRR 14, 34; 3 SHRR 66, 101 (identifying Runnels's interest in organizing inmates), 134 (identifying an "abundance of stuff" to contend with in the TDCJ files about Runnels being "very anti-TDCJ" and organizing inmates to resist, use aggression and violence and bloodshed").

Dr. Fabian's 2017 report confirms the information upon which trial counsel's strategy was based, and Runnels's does not take into consideration the very negative information trial counsel would have risked exposing to the jury with a mental-health based defense. The Court, having weighed the facts and circumstances of this case, determines that the claim lacks merit, the prior findings of the Court are correct, the Magistrate Judge's recommendation is correct, and the demands of justice do not justify the relief requested.

### C. The record in the Court of Appeals does not dictate a different result

Finally, Runnels contends the Magistrate Judge improperly ignored the relevance of the actions taken by the Court of Appeals in 2016 regarding Mr. Vernay. The Magistrate Judge gave due consideration to these actions and correctly determined that they did not constitute a finding that Mr. Vernay had abandoned Runnels during the earlier proceedings before this Court. As it stands, the record before this Court is far from showing that Mr. Vernay "abandoned" Runnels during the original federal habeas proceedings or that his representation amounted to "structural error." Beyond the determinations of no abandonment and no structural error, it is not the function of the Court to assess in hindsight the ways in which federal habeas counsel's representation could have been better. *See generally Pinholster*, 563 U.S. at 189 (clarifying that the purpose of the Sixth Amendment effective assistance guarantee is not to improve the quality of legal representation but to ensure that criminal defendants receive a fair trial). The Court will not infer abandonment by Mr. Vernay from the Court of Appeals's order, when Mr. Vernay's actions in this Court plainly refute that allegation.

### II.

Pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), this Court finds that a certificate of appealability should be denied. Runnels has failed to show that reasonable jurists (1) would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). If Runnels files a notice of appeal, he may proceed in forma pauperis on appeal. 18 U.S.C. § 3006A(d)(7).

III.

Runnels is either (1) raising a new, unexhausted claim of ineffective trial counsel, as he now asserts, or (2) raising the same claim that was deemed exhausted and decided against him on the merits under § 2254(d), as held in the R&R. Either way, the Rule 60(b) motion is a second-or-successive petition subject to the limitations in § 2244(b)(1) or (b)(2). The Court therefore OVERRULES the objections filed by Runnels, ADOPTS the findings and conclusions of the Magistrate Judge, and TRANSFERS the Motion to the United States Court of Appeals for the Fifth Circuit as a second-or-successive petition.

In the alternative, the Court concludes Runnels has not presented evidence justifying equitable relief and DENIES the Motion for Relief from Judgment under Rule 60(b). (Doc. 52.)

IT IS SO ORDERED.

ENTERED this 31st day of October, 2017.

MARY LOU ROBINSON
UNITED STATES SENIOR DISTRICT JUDGE