REPORTER'S RECORD
VOLUME 17 of 19

TRIAL COURT CAUSE NO. 48,950-D

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE 320TH DISTRICT COURT |
| | ) | |
| VS. | ) | IN AND FOR |
| | ) | |
| TRAVIS TREVINO RUNNELS | ) | POTTER COUNTY, TEXAS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRIAL ON THE MERITS

OCTOBER 28, 2005

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FILED IN
COURT OF CRIMINAL APPEALS
MAY 0 2 2005
Louise Pearson, Clerk

On the 28th day of October, 2005, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Don Emerson, Judge Presiding, held in Amarillo, Potter County, Texas:

Proceedings reported by Machine Shorthand.

ORIGINAL

A-P-P-E-A-R-A-N-C-E-S:

FOR THE STATE:          MR. JAMES ALLEN YONTZ
                        SBOT:  24044106
                        MR. RANDALL C. SIMS
                        SBOT:  18426650
                        MR. JOHN L. "JACK" OWEN
                        SBOT:  15369200
                        47th District Attorney's Office
                        501 Fillmore, Suite 5-A
                        Amarillo, Texas   79101


FOR THE DEFENDANT:      MR. JAMES D. DURHAM
                        SBOT:  06284000
                        Attorney at Law
                        1008 W. 10th
                        Amarillo, Texas   79101


                        MS. LAURA D. HAMILTON
                        SBOT:  20016450
                        Attorney at Law
                        215 W. 7th
                        Amarillo, Texas   79101

i

# CHRONOLOGICAL INDEX

## VOLUME 17

### (TRIAL ON THE MERITS)

Page

**OCTOBER 28, 2005**

Caption and Appearances --------------------------------- 1-2

Proceedings --------------------------------------------- 3

Charge of the Court------------------------------------- 7-13

State's Closing Statement ------------------------------ 14

Defendant's Closing Statement -------------------------- 19

State's Final Closing Statement ------------------------ 28

Jury Verdict ------------------------------------------- 41

Sentencing --------------------------------------------- 42

Reporter's Certificate --------------------------------- 45

# ALPHABETICAL INDEX

## VOLUME 17

DX    CX    RDX    RCX    VDX

(No witnesses called)

# EXHIBIT INDEX

## VOLUME 17

| EXHIBIT NUMBER | DESCRIPTION | OFFERED | ADMITTED |
|---|---|---|---|
| | (No exhibits offered) | | |

## Page 3

1               PROCEEDINGS
2             OCTOBER 28, 2005
3    (Open court, defendant present, no jury)
4      THE COURT: Okay. Are there any objections to
5 the proposed Charge of the Court?
6      MR. DURHAM: No, Your Honor. I do have a
7 couple of motions.
8      THE COURT: Okay.
9      MR. DURHAM: First, I move for an instructed --
10 instruction to the jury to answer Special Issue No. 1 no, as
11 the evidence is legally and factually insufficient to support
12 an answer of yes. It's a question of law, not of fact at this
13 point in time.
14      THE COURT: That is overruled.
15      MR. DURHAM: All right. Number two, I would
16 like the Court to instruct the district attorney to open
17 fully, as I only have one argument and I cannot respond to
18 charts used in a closing if they're not used in the opening.
19      MR. SIMS: I've got some charts I was going to
20 use in my part of the argument. I don't know whether Jim is
21 planning on using them or not.
22      MR. DURHAM: Well, if they're not used in the
23 opening, how can I respond to them?
24      THE COURT: Well, I agree with that. What are
25 they? Have you looked at them?

## Page 4

1      MR. DURHAM: Yes, I have. That's the reason
2 for the motion.
3      THE COURT: Okay. Let me see them.
4      MR. SIMS: Be glad to, Your Honor.
5      MR. DURHAM: They're their charts.
6      MR. SIMS: It's a quote from inmate Yow;
7 another quote from inmate Yow.
8      The chart that I want to utilize in regards
9 to --
10      THE COURT: Don't move it.
11      MR. SIMS: I understand. I'm trying to hold it
12 still.
13      I'm going to talk about in relationship to the
14 offense, can apply these.
15      THE COURT: Well, I'm not going to structure
16 his argument for him. I'll let you, if you want to, sit here
17 and take notes of each of those and respond --
18      MR. DURHAM: If I -- how can I respond to them
19 before they are raised. If I raise them, that gives
20 credibility to them because I'm responding before they're
21 raised.
22      THE COURT: Okay. Do you want an opportunity
23 to make another argument after his?
24      MR. DURHAM: Yes, sir.
25      THE COURT: A very short one --

## Page 5

1      MR. DURHAM: Yes, sir.
2      THE COURT: -- to respond to these things?
3      MR. DURHAM: Yes, sir.
4      THE COURT: The Code of Criminal Procedure
5 provides that there shall be no argument less than two if
6 requested, but the defendant -- but the State gets to go last,
7 so that means he'll get three.
8      All right with you?
9      MR. DURHAM: Well, Judge, it -- I mean, a man's
10 life is at stake here and he's going to put in material in his
11 closing argument that if I respond to, he gets to respond
12 again, why can't they open fully if they're going to open?
13 That's all I'm asking. I'm just asking for them to play by
14 the rules and open fully.
15      MR. SIMS: The rules don't require --
16      MR. DURHAM: The rules don't count. I'm
17 glad -- I hope that's on the record.
18      MR. SIMS: I did not say the rules don't count,
19 Your Honor.
20      THE COURT: I think his statement was that the
21 rules don't provide and then it kind of trailed off.
22      Okay. At any rate --
23      MR. DURHAM: I misinterpreted his words. I
24 apologize.
25      THE COURT: Okay. Just let me know before I

## Page 6

1 send the jury out. If you want an opportunity to say more,
2 let me know.
3      MR. DURHAM: Very well.
4      THE COURT: Okay. Now, with regard to the
5 Charge of the Court, does the defense have any special
6 instructions, requests, or objections?
7      MS. HAMILTON: No, sir.
8      THE COURT: Okay. Bring them in, Gary.
9    (Jury entered the courtroom)
10      THE COURT: Okay, folks, as I told you
11 yesterday, I will now read the Charge of the Court to you.
12 Following that, the attorneys will make closing comments and
13 argument. You will be retired then to consider your verdict.
14 You'll take the verdict form back there with you. We have
15 made copies for each of the 12 of you who will serve on the
16 jury. At the time I send you back, I'll discharge the two
17 alternate jurors, so all of you will have a copy of it in
18 there to go over.
19      The law provides that you may either take the
20 evidence that's been introduced for your benefit back with you
21 to begin with, if you want it. If you don't want it right
22 then, you want to kind of get your bearings, that's fine, too.
23      All I need you to do is just knock on the jury
24 room door and tell Colonel Johnson that you want the evidence
25 and he will see that it's all brought in for you.

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS

Case 2:12-cv-00074-D-BR   Document 84-4   Filed 01/17/13   Page 5 of 15   PageID 2797

TRIAL ON THE MERITS
OCTOBER 28, 2005

Page 7

1       "Members of the jury, the defendant, Travis
2  Trevino Runnels, stands charged by indictment with the offense
3  of capital murder, alleged to have been committed in Potter
4  County, Texas on or about the 29th day of January, 2003.
5       "To this charge the defendant has pleaded
6  'guilty,' and he has persisted in entering such plea,
7  notwithstanding the court, as required by law, has admonished
8  him of the consequences of the same; and it plainly appearing
9  to the court that the defendant is sane, and that he is not
10 influenced to make this plea by any consideration of fear, nor
11 by any persuasive or delusive hope of pardon prompting him to
12 confess his guilt, said plea is by the court received, and the
13 jury is instructed to find the defendant guilty as charged in
14 the indictment.
15      It now becomes your duty to answer certain
16 questions, called 'Special issues' in order that the Court may
17 assess the punishment prescribed by law.  Before answering the
18 Special Issues, you must carefully consider the following
19 instructions:
20      "You are instructed that the mandatory
21 punishment for the offense of Capital Murder is confinement in
22 the Institutional Division of the Texas Department of Criminal
23 Justice for life, or death.
24      "In determining your answers to the questions,
25 or the Special Issues submitted to you, you shall consider all

Page 8

1  the evidence submitted to you in this trial.
2       "In arriving at the answers to the Special
3  Issues submitted, during your deliberations you must not
4  consider, discuss, nor relate any matters not in evidence
5  before you.  You should not consider nor mention any personal
6  knowledge or information you may have about any fact or person
7  connected with this case which is not shown by the evidence.
8       "In arriving at the answers to the Special
9  Issues submitted, you are instructed that you cannot, and you
10 must not, render a compromise verdict; that is, in arriving at
11 your answers to the Special Issues, you are not to arrive at
12 the same by agreeing among yourselves to answer one Special
13 Issue in one way in exchange for an agreement to answer the
14 other Special Issue another way.  Nor are you to arrive at
15 your answers by lot or by chance; or by any other method other
16 than by a full, fair, and free discussion of the evidence
17 bearing thereon.
18      "In arriving at the answers to the Special
19 Issues submitted, you are instructed that if there is any
20 testimony before you in this case regarding the defendant
21 having committed offenses or bad acts other than the offense
22 alleged against him in the indictment in this case, you cannot
23 consider said testimony for any purpose unless you first find
24 and believe, beyond a reasonable doubt, that the defendant
25 committed such other offense, offenses, bad act, or bad acts,

Page 9

1  if any."
2       Folks, if you will delete after the word -- end
3  that sentence with "any."  Delete "were committed," please.
4       "Even then, you may only consider the same as
5  they bear upon the Special Issues submitted, and for no other
6  purpose.
7       "In the event the jury is unable to agree upon
8  an answer to any Special Issue in accordance with the
9  conditions and instructions outlined herein, the Presiding
10 Juror will not sign an answer to that Special Issue.
11      "You are instructed that you will answer
12 Special Issue No. 1 either 'Yes' or 'No,' in accordance with
13 the instructions contained herein.
14      "You are instructed that the burden of proof in
15 Special Issue No. 1 rests upon the State, and it must prove
16 the affirmative - that is, an answer of 'Yes' -- as to such
17 issue beyond a reasonable doubt.
18      "You are instructed that you shall consider all
19 evidence, including evidence of the defendant's background or
20 character or the circumstances of the offense that militates
21 for or mitigates against the imposition of the death penalty.
22      "In the event you have a reasonable doubt as to
23 an affirmative answer to Special Issue no. 1 after considering
24 all the evidence before you and these instructions, you will
25 answer Special Issue No. 1 in the negative, if you can do so

Page 10

1  in accordance with the instructions contained herein, and say
2  by your verdict 'No' as to that Special Issue.
3       "You are instructed that you may not answer
4  Special Issue No. 1 'Yes' unless all twelve (12) jurors agree
5  to such answer.  Furthermore, you are instructed that you may
6  not answer Special Issue No. 1 'No' unless ten (10) or more
7  jurors agree.
8       "It is not necessary that all members of the
9  jury agree on what particular evidence supports a negative
10 answer - that is, an answer of 'No' - to Special Issue No. 1.
11      "You are further instructed that if the jury
12 returns an affirmative finding - that is a 'Yes' answer - as
13 to Special Issue No. 1, then the jury shall answer Special
14 Issue No. 2.  Otherwise, you will not answer Special Issue
15 No. 2.
16      "You are instructed that you will answer
17 Special Issue No. 2 either 'Yes' or 'No,' in accordance with
18 the instructions herein.
19      "You are instructed that you may not answer
20 Special No. 2 'No' unless all twelve (12) members agree to
21 such answer.  Furthermore, you are instructed that you may not
22 answer Special Issue No. 2 'Yes' unless ten (10) or more
23 jurors agree.
24      "It is not necessary that members of the jury
25 agree on what particular evidence supports an affirmative

Case 2:12-cv-00074-D-BR   Document 84-4   Filed 01/17/13   Page 6 of 15   PageID 2798

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS

TRIAL ON THE MERITS
OCTOBER 28, 2005

### Page 11

answer - that is, an answer of 'Yes' - to Special Issue No. 2.

"You are instructed that you shall consider 'mitigating evidence' to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.

"In the event the jury is unable to agree upon an answer to Special Issue No. 1 [sic] in accordance with the conditions and instructions outlined above, the Presiding Juror will not sign either answer to Special Issue No. 2.

"You are instructed that if the jury answers that a circumstance or circumstances warrant that a sentence of life imprisonment rather than a death sentence be imposed, the court will sentence the defendant to imprisonment in the institutional division of the Texas Department of Criminal Justice for life.

"Under the law applicable in this case, if the defendant is sentenced to imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals forty (40) years, without consideration for any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee

### Page 12

that parole will be granted.

"When you are given a legal definition, you are bound to accept that definition in place of any other meaning. If a word or phrase is not defined, simply ascribe to it the meaning commonly understood for that word or phrase.

"You, the jury, are the exclusive judges of the credibility of the witnesses, of the weight to be given the evidence and of the facts proved, but you are bound to receive the law from this Court as given in this charge and be governed thereby.

"Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the defendant has elected not to testify, and you are instructed that you cannot and must not consider, discuss, allude to, comment upon or refer to that fact throughout your deliberations or take it into consideration for any purpose whatsoever against him.

"You are charged that it is only from the witness stand that the jury is permitted to receive evidence regarding the case, or any witness therein, and no juror is permitted to communicate to any other juror anything he or she may have heard regarding the case or any witness therein, from any source other than the witness stand.

### Page 13

"After you have retired to the jury room, it is the duty of your presiding juror to preside at your deliberations, vote with you, and when you have agreed upon a verdict in accordance with the instructions contained herein, to certify to your verdict by signing his or her name as presiding juror to the verdict form attached hereto. After you have retired to the jury room, no one has any authority to communicate with you except the officer who has you in charge. You may communicate with this Court in writing through the officer who has you in charge. Do not attempt to talk to the officer who has you in charge, or the attorneys or the Court, or anyone else concerning any question you may have. After you have arrived at your verdict, you may use one of the verdict forms attached hereto by having your presiding juror sign his or her name to the particular form that conforms to your verdict, but in no event shall he or she sign more than one of such form.

"Following the arguments of counsel, you may retire to consider your verdict."

Signed Don Emerson, Judge Presiding.

There follow verdict forms.

I will tell you, folks, that this charge I just read to you, that last little bit about one verdict form only refers to those contained within Special Issues No. 1 and 2.

The first thing you will find in this packet is

### Page 14

a verdict form with regard to the guilt/innocence stage, which is to be signed by the presiding juror in accordance with the instructions I gave you to find the defendant guilty. That is merely a formality and those portions that I just read you about signing only one of the forms only applies to Special Issue No. 1 or No. 2.

Do you see why we're sending 12 copies back?

Okay. Let me see the lawyers up here a minute.

(At the bench, on the record)

THE COURT: You made 12 copies, right?

MR. OWEN: No, I haven't. I will.

THE COURT: That's okay, I'll handle it.

Okay. Thanks.

(Open court)

THE COURT: Go ahead.

STATE'S CLOSING STATEMENT

MR. YONTZ: Your Honor, may it please the Court, Counsel. Throughout this trial, at times this has been referred to as a tragedy. It's not a tragedy. This is a murder, far worse than a tragedy.

Many years ago, there was an episode of Mash in which Father Mulcahy and Hawkeye --

MR. DURHAM: I'm sorry, that's outside the record, Your Honor. I didn't -- don't recall seeing that being played to the jury. That's outside the record.

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS

Case 2:12-cv-00074-J-BR   Document 84-4   Filed 01/17/13   Page 7 of 15   PageID 2799

TRIAL ON THE MERITS
OCTOBER 28, 2005

Page 15

1 THE COURT: Overruled.
2 MR. YONTZ: Which Hawkeye and Father Mulcahy
3 were talking, and Father Mulcahy quotes General Sherman that
4 "War is hell." And Hawkeye says, "No, war is war and hell is
5 hell and of the two, war is the worst because in hell only the
6 guilty suffer."
7 What this gentleman has wreaked upon the Wiley
8 family is far closer to the latter, where the innocent suffer
9 as well and continue to suffer.
10 There is no question of guilt in this case.
11 There is no issue of that. After you sign the verdict form
12 indicating guilty, then go to the Special Issues. And each of
13 you have seen this chart before.
14 Ladies and gentlemen, in looking at Special
15 Issue No. 1, look to the evidence that's been presented to
16 you, consider the testimony of the witnesses. Out of
17 everything that's been said in this trial, perhaps the most
18 eloquent statement comes from Mr. Ellis [sic] as he testified,
19 an inmate in the penitentiary. His simple words through his
20 tears, "Mr. Wiley was a good boss."
21 Whether there is a probability the defendant
22 would commit criminal acts of violence that would constitute a
23 continuing threat to society. All people are members of
24 society; all people, including those in the penitentiary and
25 outside the penitentiary, whether they're employees or inmates

Page 16

1 in the criminal justice system.
2 Look to the actions of the defendant. It was
3 interesting that defense counsel would ask each one of those
4 witnesses, "Well, have you seen him involved in any fights
5 with other inmates?" "No, he hasn't been involved in fights
6 with other inmates."
7 But you do have what type of person he is. You
8 have his criminal history, you have his burglary conviction,
9 you have his armed robbery conviction with a firearm, you have
10 the assault where he hit the officer in the jaw and then ran
11 back to his cell. You have the murder where he snuck up
12 behind him, pulled his head back and cut his throat with a
13 knife. You have him continuing to throw urine, feces, light
14 bulbs, attacking people that have done nothing to him, except
15 for whatever reason he wants to strike out.
16 His action in prison, his actions before tell
17 you he is going to be a person who will commit criminal acts
18 of violence that constitute a continuing threat to society.
19 You are then asked to look at Question 2,
20 Special Issue No. 2. Taking into consideration all the
21 evidence, the circumstances of the offense, he had a
22 disagreement, he was in the penitentiary, but he didn't want
23 to work, he didn't want to sweep the floor. And because --
24 MR. DURHAM: Your Honor, that is outside the
25 record. There was no evidence that that's what was said, that

Page 17

1 he didn't want to sweep the floor. There's no evidence --
2 THE COURT: The jury will recall the evidence.
3 MR. DURHAM: Thank you, Your Honor.
4 MR. YONTZ: He didn't want to do it, and he
5 carried out his plan to kill Stanley Wiley because of words,
6 not even a physical confrontation, simply words, he committed
7 a murder.
8 You saw the injuries that Stanley Wiley
9 sustained. You heard Dr. Natarajan describe those injuries.
10 That knife cut so deep that it cut entirely through the
11 trachea and actually cut the spinal cord in back of the
12 trachea. His only intent was to murder.
13 The defendant's character and background.
14 We've touched on that. The defendant is a violent person.
15 The defendant will continue to be a violent person.
16 The personal and moral culpability of the
17 defendant. Ladies and gentlemen, that's one of the knives
18 that was introduced that was picked up. Set that knife down,
19 ladies and gentlemen, and if I stand over here and I look at
20 that knife all day, it's not going to move. No matter what I
21 want to do with that knife, it's not going to move. It's not
22 going to move until I walk over and pick it up and then do
23 whatever I want with it. And that's the same with the
24 defendant.
25 That knife was not going to cut Stanley Wiley's

Page 18

1 throat until the defendant put it to that use. He is the only
2 one responsible for this crime. He is the only one that is
3 personally and morally culpable of this murder. He acted
4 alone, and there is no mitigating circumstance or
5 circumstances that warrant a life sentence in this case over a
6 death sentence.
7 Ladies and gentlemen, this is not to suggest in
8 any way that your decision is going to be easy or that's it
9 should be made in haste. It's a difficult decision. It's a
10 terribly difficult decision. But it's one that you have sworn
11 an oath to base upon the evidence in the case.
12 Society is full of difficult decisions that
13 have been made by brave people that are willing to take upon
14 them the responsibility that has been placed similarly as it
15 has upon your shoulders.
16 One of the things that I have done, or used to
17 do more than I do now, is collect ties of historical events,
18 historical people. And once in a while I wear this one.
19 Somebody will get up close to it and they'll say, "Well,
20 what's that little design or that little person in there?"
21 That's actually a person of somewhat historical significance,
22 though not very well known. He was a captain of an army, he
23 was the leader of a nation, and the people in his nation
24 wanted to succumb to taking the easy way out of their
25 problems. They were at war and they were thinking of

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS
Multi-Page™
Case 2:12-cv-00074-D-BR Document 84-4 Filed 01/17/13 Page 8 of 15 PageID 280
TRIAL ON THE MERITS
OCTOBER 28, 2005

Page 19

1 surrendering --
2      MR. DURHAM: Your Honor, this is -- I have no
3 way of testing the validity of this story, and I'm going to
4 object to it as being outside the record.
5      THE COURT: Overruled.
6      MR. YONTZ: They were at war, they wanted to
7 take the easy way out, they wanted to take the easy way out of
8 decisions in their society. And it got to the point that he
9 became so flustered and so angered that the historical record
10 records that he ripped his coat, he tore his coat and he wrote
11 upon it, "For our nation, for our justice, for our liberty,
12 for our families, our wives, and our children is why we must
13 make the tough decisions."
14      He could very easily have put, "For our society
15 is why we have to make the tough decisions." It's also why
16 you have to make the tough decision.
17      THE COURT: Mr. Durham?
18          DEFENDANT'S CLOSING STATEMENT
19      MR. DURHAM: May it please the Court. Ladies
20 and gentlemen of the jury. I've got a tie story, too. My tie
21 has crosses on it for a man who made a difficult decision, who
22 died for all of us where we could enjoy forgiveness for our
23 sins and omissions, real and imagined.
24      I told you on voir dire, I stood before you and
25 I said, "I have a very sober and awesome responsibility." Do

Page 20

1 y'all remember that? Representing a man on trial for his
2 life, Travis Trevino Runnels. Well, my job, after a sleepless
3 night, ends today. Your job begins, I hand to you the awesome
4 and sober responsibility of evaluating the evidence and
5 answering Special Issues.
6      And I want to talk about the evidence, and I
7 will. The Court gives you a charge, tells you to follow the
8 evidence. Now, we spent a lot of time talking about the
9 murder. And let me -- let me hasten, it was a horrific
10 murder. But do you know that every murder, every loss of
11 life, be it man, woman, child, adult, the unborn, every loss
12 of life is horrific and it leaves a void, it leaves a void for
13 those around them.
14      There is nothing that Travis can do to restore
15 Stanley Wiley to life. There's nothing you can do. We can
16 seek revenge. We can take him out to the nearest tree and
17 string him up, because he pled guilty, so why the -- the
18 pageantry of a trial? Because we are a society, we are a
19 sane, rational society that looks at all the evidence. And
20 instead of taking the easy way out and just killing everyone
21 who offends us -- and all of us -- well, maybe not all of us,
22 but many of us have at various times said things like -- when
23 you're cut off in traffic, "I could kill that SOB," and you
24 didn't mean it. But it was out of anger. And you see, we're
25 so permeated with the violence in our TV and our literature

Page 21

1 and our movies, you can't go to a movie that there's not 14
2 cars destroyed and a dozen people killed. We're losing troops
3 every day in Iraq to fight for freedom, freedom, due process,
4 the American way.
5      Now, where does this come down to? It comes
6 down to one specific question. Stop and consider all the
7 evidence. Some of you go to Palo Duro Canyon. I've gone to
8 Palo Duro Canyon. I look across there and I see the vista and
9 the cedar trees, sometimes when it's rained, the stream
10 running through, and it's green. And sometimes you might even
11 see an animal down there. There are animals down there that
12 you might see. And you're just taken with the totality of the
13 landscape.
14      But, you know, you can focus on one thing.
15 Right there, there's a bare spot where somebody's polluted the
16 ground, dropped some gasoline on it and it's a bare spot and
17 it's ugly. So are you going to ignore the entire vista
18 because of one gasoline spot? No, you're going to look at the
19 totality.
20      Now, that's what I'm asking you to do, is look
21 at the totality and answer this one question? What witness,
22 what one witness looked you in the eye and said, "Travis
23 Runnels is a future danger"? What psychologist, what
24 psychiatrist, what expert brought their magic ball, their
25 crystal -- maybe you've seen these little things, 8-balls, you

Page 22

1 turn it over and it has an answer, you know, "Will I be rich?"
2 You turn it over and it says, "It depends on what you do," you
3 know. You don't plan your life on a toy. You consult
4 experts, you ask questions.
5      What expert, what expert did they bring that
6 said, "He will be a future danger"? What Travis Runnels will
7 be is living in an area roughly this size for the rest of his
8 life, is what he will be.
9      Now, looking at the issue of mitigation, yes, I
10 asked if he were a violent person, if he fought in prison,
11 because that's -- you know, those are the people he lived
12 with, those were the people he was around all the time, those
13 are the people who were in his face, except for the bosses.
14      And you know what really impressed me, we had
15 seven -- seven inmates testify. Y'all recall that. Six
16 black, one white. And while they were testifying on those
17 back two rows, it was full of correctional officers staring at
18 those seven prisoners. But the next day, the next day when
19 the prisoners weren't testifying, there were not two rows of
20 correctional officers back there.
21      When the correctional officers were testifying,
22 they didn't have the support of their fellow correctional
23 officers, but when the prisoners were testifying, the
24 prisoners certainly had what appeared to me to be the
25 intimidation of the correctional officers, the bosses.

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS

TRIAL ON THE MERITS
OCTOBER 28, 2005

Case 2:12-cv-00074-J-BR   Document 84-4   Filed 01/17/13   Page 9 of 15   PageID 2801

Page 23

1  You know the difference in slavery and the
2  penitentiary? The slaves could escape. But now we've got the
3  razor wire, we've got the double lock. We have Administrative
4  Segregation, and we poke the animal in the cage and say, "Be
5  tame. Walk this line, walk on this side, be tame. If you're
6  not tame, if you don't behave good, we'll take away your
7  radio. And if you don't behave good soon, we'll destroy your
8  radio."
9         Now, certainly, they have a problem controlling
10 people, but they're still human, they're still human.
11        The witnesses. Stan's sister. My heart, just
12 as yours, goes out to Stanley's sister, both when she
13 identified his picture and at the end when she testified about
14 the void his death left.
15        Well, if the only issue in this case were
16 revenge, then we might well just set up a guillotine or
17 something and let Stan's sister pull the switch and chop off
18 his head. But this is not a revenge society. That's not what
19 it's about.
20        And I don't think that would give her closure.
21 Nothing will ever close that void, no more than the void left
22 by the death of her mother just a scant three months before
23 her brother was murdered. A double hit. My heart goes out to
24 her.
25        Then our doctor testifies. We knew he was

Page 24

1  dead. We knew that when we came in or we wouldn't be here.
2  We knew it was by his throat being cut. We knew that or we
3  wouldn't be here. And Travis stood up and said, "Guilty. I
4  am guilty of murder. I am guilty of murder." He bared his
5  soul. "I am guilty."
6         And in effect said, "Okay, Mr. Sims, prove
7  beyond a reasonable doubt I'm a future danger." And Mr. Sims
8  did not prove he was a future danger. Instead, the
9  evidence -- the seven prisoners were asked, "Is he a trouble
10 maker? Has he caused trouble?" Something caused this, and
11 the biggest -- the biggest question in my mind, and it may or
12 may not be in your mind, is not the fingerprints, I understand
13 fingerprints, but the biggest question in my mind is why. Why
14 do we have such a system that we lock people up like animals,
15 treat them like animals, and expect them to be citizens of the
16 month? Why?
17        Okay. What's going to happen in the future?
18 Well, I'll predict that the sun will come up tomorrow in the
19 east, and that's one of the few things that I feel pretty sure
20 about without some evidence.
21        I'm not going to predict that Harriet Myers
22 will be on Supreme Court, even though yesterday morning at
23 this time I would have predicted it based upon the evidence.
24 But it didn't happen. I couldn't see the future. I didn't
25 know she was going to withdraw, and I doubt that -- I think

Page 25

1  President Bush may have known she was going to withdraw, but I
2  didn't. You can't predict the future.
3         Anyway, these seven inmates testified about his
4  peaceable nature, about him not being violent. And, of
5  course, there's going -- and from 1990, or something like that
6  to 2003, 13 -- ten, 13 years, you're locked up, are you going
7  to get in a little -- have some trouble? One incident before
8  this murder with Officer Madigan, one incident in the previous
9  ten years. Then he committed a murder.
10        Then he went in Administrative Segregation for
11 months, 23 hours a day, right here, this size, 23 hours a day.
12 Twenty-three hours a day if he was a good boy. If he was not
13 a good boy, then they would take away his shower time, his
14 outside time, and he would stay in his 54 square foot, one
15 side with a bed and the little space in between, 23 hours a
16 day.
17        The LVN and the RN who testified, testified
18 that Mr. Wiley's injuries, those injuries were fatal. No
19 question about it. That -- we didn't contest -- we did not
20 contest for one minute that Travis killed Stanley Wiley. He
21 did. That's a fact.
22        We didn't say, "Okay, take a week, a month and
23 bring us DNA and test the knives and prove all this." We
24 said, "We did, we bare our soul, we did." The first act of
25 contrition is admission. The first act of contrition is

Page 26

1  admission.
2         Now, he threw things at the guards. They
3  weren't hurt, didn't hit them, splashed on them. Disgusting,
4  disgusting. He didn't have a shiv, and we all know what shivs
5  are. We've seen enough television or read enough stories or
6  heard enough about the prison to know what shivs are.
7         So, you know, since the murder he threw three
8  things, so, boy, that -- boy, he sure -- sure is a danger.
9  If -- that probably will happen 20 times in the next hour at
10 the prisons in Texas, something being thrown at a guard or a
11 prisoner, with about the same result. And that certainly
12 justifies taking a man's life.
13        In effect, they're asking you to speculate
14 Travis into a death sentence. They have not brought you proof
15 beyond a reasonable doubt. And you swore you would do that.
16 You swore you would hold the State to their burden of proof.
17 I tried to pick an intelligent jury that would follow the
18 evidence, that would hold the State to their burden of proof,
19 that would expect to hear expert testimony about how you
20 predict future dangerousness.
21        Did you hear one word, one word from one expert
22 who said, "He presents a danger in the future based upon my
23 experience, my studies, psychological tests or anything?" Not
24 one word, not one word.
25        Now, they're going to say, "Well, just answer

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS

Case 2:12-cv-00074-D-BR Document 84-4 Filed 01/17/13 Page 10 of 15 PageID 2802

Multi-Page™

TRIAL ON THE MERITS
OCTOBER 28, 2005

Page 27

1 that yes and go down here," mitigation, what is -- mitigation
2 is like we told you on voir dire. Mitigation is whatever you
3 say it is. If you think -- let me tell you something.
4 Honestly, if I were on trial for my life and it were a choice
5 between life in prison and the death sentence, and knowing
6 that this area right here that I pace is my world, kill me,
7 just kill me. That's no punishment. Walking in a circle for
8 at least, at least, at least 40 years, to the age of 78 years,
9 or 68, whatever it is, remembering that he's still serving his
10 first sentence that has to be completed before he starts
11 serving this sentence, just kill me. I don't want to die. An
12 old man, doddering, not knowing anyone, not knowing anything,
13 not having a television, not getting to see Dallas play
14 football, a little thing. It's the little things in life
15 that, when they're taken away from us that count, like radios
16 and tobacco and things of that nature. Just kill me. That's
17 the easy decision, just kill me.
18     Well, Mr. Yontz talked about his tie. I have a
19 tie. And, you know, once there was a jury of one. That
20 jury's name was Pontius Pilate, and he washed his hands. He
21 ignored the evidence, he just washed his hands. He wasn't
22 bound by the evidence. It didn't have to be proven by this
23 man beyond a reasonable doubt. He just washed his hands, and
24 we now have the cross.
25     You can do what your oath said, hold the State

Page 28

1 to prove their case beyond a reasonable doubt, prove beyond a
2 reasonable doubt that he's a future danger, or you can wash
3 your hands, automatically answer it yes. You're the judges of
4 the evidence. You're the jury. Thank God we have juries.
5 Thank God that we don't have lynchings, that we don't have
6 summary execution. Thank God that we can live and not worry
7 about notes being passed to us in our cell that says, "Nigger,
8 you're going to die."
9     Look at the entire panorama of Palo Duro
10 Canyon. Do not look only at the polluted gas spot. Thank
11 you.
12     THE COURT: Mr. Sims?
13     STATE'S FINAL CLOSING STATEMENT
14     MR. SIMS: May it please the Court, Counsel.
15 Ladies and gentlemen of the jury, in voir dire, we talked
16 about common sense. Genius, common sense is genius dressed up
17 in work clothes. And when we looked for a jury, we looked for
18 a jury that was intelligent and one with common sense. And I
19 told you then and I'm telling you now, I ask you to use both,
20 use both.
21     We accept our responsibility for the burden of
22 proof in this case. We were ready to do so in guilt/innocence
23 beyond a reasonable doubt. Our burden of proof on the first
24 issue is beyond a reasonable doubt. We have no burden on the
25 second issue. And folks, I submit to you that there is no

Page 29

1 doubt that the defendant is guilty of this crime; thus, the
2 guilty plea.
3     I submit the evidence has showed that to you
4 and it had showed that to them. And I'm going to further
5 suggest to you that the evidence does substantiate beyond a
6 reasonable doubt that there is the probability that this
7 defendant will commit future acts of violence, and we'll get
8 into that in a minute. Jim touched on it to start off with,
9 but we'll get into that evidence. And that there is not a
10 single shred of mitigating evidence before you.
11     And you made an oath to make your decision
12 based on the law and the facts as you hear them in court. And
13 that is the issue. It is not if and but and candies and nuts
14 about what could be brought to you. The question is: Has the
15 State of Texas proved to you beyond a reasonable doubt with
16 the evidence that you have heard to answer this question yes?
17 And that's what you took an oath to do, is listen to the
18 evidence and make that decision and not speculate about
19 things.
20     Forgiveness. Jesus Christ stood on the cross
21 next to a thief, and he forgave that thief, but what else did
22 he do? He did not interfere with the punishment that had been
23 assessed. He allowed the death sentence to be imposed.
24     When you are driving down the road, ladies and
25 gentlemen, and you make that comment, "I just want to kill

Page 30

1 that somebody," you're right, you don't mean it. When this
2 defendant told Bud Williams, Jr., before he committed this
3 crime he wanted to kill Mr. Wiley, guess what, he meant it and
4 he did it. Premeditation. He went to three different people
5 before he got the knives, and he duped Mr. Elkins out of his
6 knife, and I'll come back to that in a minute.
7     An expert witness would have been just a
8 witness. That word is not gold. That witness would do the
9 same thing you're going to be asked to do, just make a
10 decision based on the evidence. And that's what would have
11 happened. Folks, y'all can do that just as good as anyone can
12 in this case because it is clear, and we'll talk about that
13 again a little more in the future.
14     All that is needed for evil to flourish is for
15 good men and women to do nothing. Inmate Yow. I asked him,
16 "Why did you hurt Mr. Wiley," something to that effect. And
17 his response, "Any offender or inmate" -- the defendant's
18 response, "Any offender or inmate, as long as they were
19 white." Anybody, anybody.
20     Then Mr. Yow, inmate Yow said something to the
21 effect of, "Don't you realize if he dies, you can get the
22 death penalty?" Can you recall those chilling words, "Dead
23 men can't talk," was his response. And he's absolutely right,
24 dead men can't talk directly to you. Mr. Wiley can no longer
25 talk directly to you. He silenced him, and the defendant

Page 31

1 relied on the code of silence of the inmates --
2      MR. DURHAM: I'm sorry, I don't recall there
3 being evidence about a code of silence among the inmates and
4 I'm going to object to that --
5      THE COURT: The jury will recall the evidence.
6      MR. DURHAM: -- as being totally outside the
7 record.
8      MR. SIMS: The code of the inmates. And we had
9 seven come in, murder, aggravated robbery, aggravated sexual
10 assault, injury to a child, aggravated robberies. But you
11 know what, folks, they stood up and they spoke for Mr. Wiley
12 and they told you about the facts and circumstances of this
13 offense and what occurred as they saw it; that it was
14 premeditated. I submit to you that it was unprovoked. Words
15 allow for the killing of an individual? That person in the
16 car is dead if that's the case. Words do not justify death.
17      Premeditation. He told inmate Johnson he was
18 going to do it and he did it. He asked two different people
19 for the knife before he went to Mr. Elkins and finally got the
20 knife.
21      Mr. Elkins, how sad. A man who referred to
22 Mr. Wiley as a good boss, through his tears, a good guy. And
23 he now believes that it was his knife that was used to kill
24 that man, and that is why he wept, because he --
25      MR. DURHAM: Your Honor, that -- that's --

Page 32

1 that's entirely outside the record.
2      THE COURT: Objection is sustained.
3      MR. DURHAM: May I have an instruction?
4      THE COURT: Jury is instructed to disregard.
5      MR. SIMS: I'll suggest that he has remorse
6 over what happened to Mr. Wiley, and you have seen that, and
7 that for a life sentence to be worse than death, a person must
8 have remorse. If they don't, it's not.
9      And the evidence in this case, from the actions
10 this defendant took that day, show he has no remorse for this
11 offense. He took a knife like this and pulled his head back
12 and cut his throat. And in that action, he turned this man
13 into this man. (Indicating) And will you please look at the
14 look on his face?
15      It was an intentional and knowing killing. I
16 submit to you it was cold-blooded, I submit to you it was
17 cowardly. He attacked him from behind, with no warning, no
18 chance to defend himself, and killed him with no chance to
19 tell his family goodbye and with no due process, and for what?
20 Asking a guy to work, asking him to do what he was supposed to
21 be doing. He had committed no offense to justify the death
22 penalty. We cannot say the same thing about this defendant.
23 And he calmly walked away and sat down. Those are the things
24 he did.
25      By striking that blow, this defendant struck a

Page 33

1 strong and severe blow for injustice because Mr. Wiley had
2 done nothing to deserve it.
3      A dead man can't talk. Well, what if -- but
4 what else can speak besides the inmates in regards to what
5 occurred that day? What is the best method of predicting the
6 future? Even Mr. Durham uses it. He predicts the sun will
7 rise in the east tomorrow morning. Why? Because it has
8 always risen in the east.
9      He's using the past to predict the future. And
10 that is the only way you can do it. That is the best way to
11 do it. And now we're going --
12      MR. DURHAM: Your Honor, we're going to object.
13 That is not the only way to predict the future, Your Honor,
14 and I'm going to object to that as being outside the record.
15      THE COURT: Sustained.
16      MR. DURHAM: Thank you. May I have an
17 instruction?
18      THE COURT: Jury is so instructed.
19      MR. DURHAM: Thank you, Your Honor.
20      MR. SIMS: The best way to predict the future,
21 I'll submit to you, is to look at past conduct. Who's
22 responsible for their actions? The person that commits them.
23 Who is responsible for this? This defendant.
24      And, folks, who is responsible for this?
25 Mr. Wiley's -- or this defendant's background? It is the

Page 34

1 defendant. Not you, not I, not Mr. Wiley, not the prison
2 system, but this defendant.
3      And let's look at it a minute. Born July 21,
4 1976, commits a burglary of a building when he's 17 and gets
5 ten years probation, gets that revoked very shortly thereafter
6 and sentenced to five years in prison. Gets out of prison,
7 very shortly thereafter, because in less -- about a year
8 later, he's committing an aggravated robbery. He gets a 70-
9 year sentence, folks, from a jury, Exhibit No. 26 over here, a
10 70-year sentence for an aggravated robbery with a firearm.
11      And while in prison -- he struck an officer
12 because the officer asked him to go do something, he committed
13 this capital murder, and since that time, he threw urine on a
14 guard from his cell where he was in closed security, while the
15 inmate was -- while the guard was dealing with another inmate,
16 wasn't even dealing with Mr. Runnels, threw the bulb at
17 Lieutenant Brown who was on the stand for quite some time, who
18 was just going -- only contact with the defendant was to go
19 give him some papers. Another act of violence.
20      Is it -- is it severe? No. Does it say it has
21 to be severe violence, folks? Other acts of criminal
22 violence. Threw the bulb at her. While he is incarcerated in
23 the highest security they have on that unit, he goes after an
24 inmate -- a worker.
25      Then he threw feces at another inmate [sic] who

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS

Multi-Page™

TRIAL ON THE MERITS
OCTOBER 28, 2005

Page 35

1  had had no dealings with him at all. He was dealing with
2  another inmate, was not directed toward him at all.
3      And what do these show, folks, lack of
4  authority, lack of respect, a lack of willingness to conform,
5  and a lack of willingness to comply with the prison structure
6  which is very structured for everyone's safety, the workers
7  and the other inmates.
8      You heard A.P. testify there's been murders on
9  death row, there's been murders on the highest level security
10 that we have, and it was an inmate on another inmate, and
11 they're supposed to be kept separate. And he said, "There are
12 no safe places in prison, nowhere."
13     These things show his unwillingness to conform.
14 He's in for a 70-year sentence, folks. We didn't get his
15 attention with a long sentence in prison. Look what he's done
16 since, including this. It's an escalating chain of events
17 because he's gone from this to striking to killing and now to
18 attacking however he can those who don't even have anything to
19 do with him.
20     Those who forget the past are condemned to
21 repeat it. Do not forget the past.
22     Mr. Durham missed a shiv -- mentioned a shiv.
23 I'll let you just -- he hasn't had a shiv yet. He's had
24 feces, he's had urine, he's had a light bulb, and he got this.
25 After using a firearm, what will be his next weapon that he

Page 36

1  gets or makes? Based on this, it's not a question of if, it
2  is a question of when. And an expert doesn't have to get up
3  here to tell you that. Your intelligence and your common
4  sense tells you that, folks.
5      Before -- be just before you're generous. Why
6  ask for life if it is such a bad punishment? Why seek the
7  punishment if it is worse than death? Common sense, folks,
8  common sense, use it.
9      Mr. Wiley clung to his last breath of light
10 because it's the most precious thing every living human being
11 has. And while he could not speak, he spoke to Mr. Askins to
12 make sure that the person that killed him was identified and
13 caught, and I would submit, in hopes of a successful
14 prosecution.
15     The inmates have spoken for him. I submit the
16 defendant's past speaks for Mr. Wiley as well. Mr. Wiley is
17 now silenced, but you are not, and the defendant cannot
18 silence you. You speak today and you must strike just as
19 strong and just as severe a stroke for justice as was struck
20 by this defendant for injustice. It will not be pleasant, it
21 will not be enjoyable, but I submit to you if you do that, you
22 will look your face in the mirror tomorrow, and I will suggest
23 you will know you have done the right thing.
24     Today is the last day of Mr. Wiley's life. He
25 is not here to speak, but others have spoken for him, and

Page 37

1  today the last words of Mr. Wiley's life will be spoken. The
2  last words, the last three words written for his life will be
3  spoken. They will be spoken by you. Stan Wiley cannot speak.
4  You must strike that strong blow for justice according to your
5  intelligence, your common sense, the law and the evidence.
6  And you must, based on that, speak three words, "guilty,"
7  "yes," "no."
8      THE COURT: All right. Members of the jury,
9  you'll now retire to consider your verdict.
10     Gary where are the jury charges, please? Have
11 you got them all there?
12     THE BAILIFF: Twelve.
13     THE COURT: Okay. If you'll step down now,
14 please.
15     (Jury left the courtroom)
16     THE COURT: Okay, folks, you were the
17 alternates. This will conclude your service. Thank you very
18 much for being with us. We'll see you next time the computer
19 brings you down. If you'll stop by on the first floor and
20 tell them that I have discharged you. Thank you very much.
21     We're in recess.
22     (Recess)
23     THE COURT: Okay. Let me see the lawyers up
24 here a minute, please.
25     (At the bench, on the record)

Page 38

1      THE COURT: You're objecting to both these
2  responses that we found because you think that this note does
3  not certify a dispute. Is that your objection?
4      MS. HAMILTON: Yes, sir.
5      THE COURT: It's overruled. Okay.
6      MS. HAMILTON: But I thought you were -- just
7  to be clear, I thought you said on the second part, you
8  weren't going to read that unless they --
9      THE COURT: I'm not. This is going to be --
10     MS. HAMILTON: Okay.
11     THE COURT: -- if they come back. I just
12 didn't want to have to get you guys --
13     MS. HAMILTON: Okay.
14     THE COURT: -- up here and do it again.
15     MS. HAMILTON: Okay.
16     THE COURT: Yes, but I'm not going to do that
17 at this first juncture.
18     MS. HAMILTON: Okay. Thank you.
19     (Open court)
20     THE COURT: Okay. Bring the jury in.
21     (Jury enters the courtroom)
22     THE COURT: Members of the jury, you have sent
23 me a letter telling me that you have -- the jury has a dispute
24 as to what was said by the first or possibly the second
25 witness about Mr. Runnels giving him the barber combs.

Page 39

1    The lawyers have suggested I say, "I'm sorry,
2 there's no dispute because it was the third witness." But
3 they have -- they have helped the court reporter find that
4 portion of the testimony and she will now read it to you.
5    THE REPORTER: Direct Examination of
6 Mr. Williams by Mr. Simms.
7    QUESTION: "Did you wake up one morning and
8 find anything under your door?"
9    ANSWER: "I woke up and there were some barber
10 combs up under my door."
11    And then later, in direct examination,
12 QUESTION: "So you talked to this defendant when you said
13 Mr. Runnels; is that correct?"
14    ANSWER: "Yes, sir."
15    QUESTION: "And he told you what?"
16    ANSWER: "That he put the barber combs up under
17 my door."
18    QUESTION: "What happened at that point, very
19 next thing?"
20    ANSWER: "He had a letter in his hand and asked
21 me would I mail this letter off to his mom if he don't come
22 back, and I asked him, 'Where are you going?' And he said, 'I
23 might not come back. I ain't going to be coming back.'"
24    THE COURT: The second portion of your request
25 simply says, "Also testimony about Mr. Runnels saying

Page 40

1 something about Mr. Wiley that morning prior to going to the
2 boot factory."
3    That does not indicate any sort of dispute
4 about anything.
5    So I'll send you back now. If you determine
6 that you do have some -- some dispute you wish to certify to
7 about this second portion, then I'll send this note back in
8 with you, just let me know. Okay.
9    (Jury left the courtroom)
10    (At the bench, on the record)
11    MR. DURHAM: While it's not necessary to
12 request, I would request that the Court instruct the audience
13 not to have any reaction to the verdict.
14    THE COURT: Well, it's not going to be
15 necessary. They are all going to remain in their places
16 before we exit, until the jury is completely out of here.
17 They --
18    MR. DURHAM: Well, I mean no clapping or
19 cheering or --
20    THE COURT: Well, if anybody does that, they're
21 going to jail.
22    MR. DURHAM: Okay. All right.
23    MR. SIMMS: I've already said something to them,
24 Your Honor.
25    THE COURT: Okay.

Page 41

1    MR. DURHAM: All right. Thank you.
2    (Open court)
3    THE COURT: Okay. Bring the jury in, please.
4    (Jury enters the courtroom)
5    THE COURT: Members of the jury, have you
6 reached a verdict?
7    JURY FOREPERSON: We have.
8    THE COURT: All right. If you would give the
9 verdict form, please, to Colonel Johnson.
10    Special Issue No. 1, the answer is, "We, the
11 jury, unanimously find and determine beyond a reasonable doubt
12 that the answer to Special Issue No. 1 is 'Yes.'"
13    Signed, Kathryn Foster, Presiding Juror.
14    Special Issue No. 2, "Answer: We, the jury,
15 unanimously find and determine that the answer to this Special
16 Issue is 'No.'"
17    Signed, Kathryn Foster, Presiding Juror.
18    Members of the jury, is that each of your
19 verdicts?
20    JURY PANEL: Yes.
21    THE COURT: State wish the jury polled?
22    MR. SIMMS: No, Your Honor.
23    THE COURT: Defense?
24    MR. DURHAM: No, Your Honor.
25    THE COURT: Okay, folks, I'll receive your

Page 42

1 verdict, then. Thank you very much for your attention and
2 your deliberations in the case. I will release you now from
3 the instructions I've previously given you with regard to the
4 secrecy of your deliberations. You may feel free to discuss
5 your verdict or your deliberations with the lawyers, or anyone
6 else, for that matter, that you wish to. At the same time,
7 you may certainly decline to do that. That declination is
8 binding on everyone and no one will bother you further about
9 that.
10    Okay. You are released now. If you'll step
11 through this way and leave your badges with us, we thank you
12 very much for your service.
13    (Jury excused)
14    THE COURT: Okay, folks, I've released the
15 jury. I'll require each member of the gallery, though, with
16 the exception of the law enforcement officers that work with
17 me here in the courthouse to remain in your place until the
18 bailiff signifies that all jurors have left the building.
19    Mr. Runnels, do you have any legal reason you
20 should not formally be sentenced, sir?
21    MR. RUNNELS: No, sir.
22    THE COURT: Travis Trevino Runnels, you having
23 been found guilty of the offense of capital murder, and in
24 accordance with the verdict of the jury returned in this case,
25 I do now sentence you to death. That sentence, of course, is

THE STATE OF TEXAS
vs. TRAVIS TREVINO RUNNELS

TRIAL ON THE MERITS
OCTOBER 28, 2005

Page 43

1 subject to review by the Court of Criminal Appeals. In a case
2 like this, you have an automatic appeal to the Court of
3 Criminal Appeals. At the same time that your direct appeal
4 will be running, there will be a writ of habeas corpus, which
5 is a procedural test that will be moving at the same time.
6 　　　　I assume that you have no funds still to this
7 point with which to hire your own attorney or to pay for a
8 transcript of the testimony in this case, and so I will
9 provide those to you. Those will be two separate lawyers.
10 　　　　Now, what I guess I need to explain to you at
11 this point is, while you have the right to request that I have
12 the same lawyers representing you on appeal that represent you
13 in trial, my preference and my experience has been that I not
14 do that. And the reason for that -- and this is completely up
15 to you. The reason for that is, new lawyers on appeal get an
16 opportunity to view it differently and get a new view of
17 things, and just gives it a better idea. All right?
18 　　　　So if that's all right with you, I'll appoint
19 two lawyers to represent you in those areas.
20 　　　　MR. RUNNELS: Can I represent myself?
21 　　　　THE COURT: You have the right under both the
22 Texas Constitution and the United States Constitution to do
23 that, Mr. Runnels. I would advise you, though, to consider
24 that seriously before you make that decision.
25 　　　　You're going to have some time here. You -- I

Page 44

1 mean, your appeal is automatic, but you have some time to
2 file -- 30 days in which to file a Motion for New Trial.
3 You've got time to talk with your lawyers, your present
4 lawyers. I'm not going to do anything until they tell me
5 they've discussed these things with you.
6 　　　　But while it's your right, it's not the wisest
7 right. Do you understand what I'm saying, Mr. Runnels?
8 　　　　MR. RUNNELS: Yes, sir.
9 　　　　THE COURT: You're not trained in the law and
10 it's just something you probably ought not to do. But I'll
11 leave that -- I mean, that decision is yours to make. But
12 that's where we stand at this point. The transcript --
13 transcription will start being prepared in the case, and I
14 stand ready to get your lawyers on track. You just need to
15 let me know after visiting with Ms. Hamilton and Mr. Durham.
16 　　　　Okay. Thank you.
17 　　　　All right. You can remove him.
18 　　　　(Defendant left the courtroom)
19 　　　　THE COURT: Okay. Everyone is free to go.
20 Thank you very much.
21 　　　　(End of proceedings)
22
23
24
25

Page 45

THE STATE OF TEXAS　　　)

COUNTY OF POTTER　　　　)

　　I, JILL ZIMMER, Official Court Reporter in and for the

320th District Court of Potter County, State of Texas, do

hereby certify that the above and foregoing contains a true
and correct transcription of the proceedings in the above-
styled and numbered cause, all of which occurred in open court
or in chambers and were reported by me.
　　I FURTHER CERTIFY that this transcription of the record
of the proceedings truly and correctly reflects exhibits, if
any, offered by the respective parties.
　　WITNESS my hand this the _____ day of
_____, 2006.

_____
JILL ZIMMER
Official Court Reporter
Certificate Number 533
Expiration Date: 12-31-2006
Potter County Courts Building
Amarillo, Texas  79101
(806) 379-2372

THE STATE OF TEXAS         )

COUNTY OF POTTER           )


    I, JILL ZIMMER, Official Court Reporter in and for the 320th District Court of Potter County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of the proceedings in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

    I FURTHER CERTIFY that this transcription of the record of the proceedings truly and correctly reflects exhibits, if any, offered by the respective parties.

    WITNESS my hand this the 25th day of April, 2006.


_____
JILL ZIMMER
Official Court Reporter
Certificate Number 533
Expiration Date: 12-31-2006
Potter County Courts Building
Amarillo, Texas   79101
(806) 379-2372